*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0278p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

TONY DAVIS,

                      *Petitioner-Appellant,*

        *v.*

BLAINE LAFLER, Warden,

                      *Respondent-Appellee.*

No. 08-1291

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13659—Gerald E. Rosen, Chief District Judge.

Argued: March 2, 2011

Decided and Filed: October 3, 2011

Before: BATCHELDER, Chief Judge; MARTIN, BOGGS, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, KETHLEDGE, and STRANCH, Circuit Judges.[*]

———————————

## COUNSEL

**ARGUED:** Micah S. Myers, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Micah S. Myers, WILMER CUTLER PICKERING HALE AND DORR LLP, Washington, D.C., for Appellant. Laura A. Cook, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

      GILMAN, J., delivered the opinion of the court, in which BATCHELDER, C. J., BOGGS, GIBBONS, ROGERS, SUTTON, COOK, McKEAGUE, GRIFFIN, and KETHLEDGE, JJ., joined. MARTIN, J. (pp. 17–22), delivered a separate opinion concurring in part and dissenting in part, in which STRANCH, J., joined. MOORE, J. (pp. 23–32), delivered a separate dissenting opinion, in which COLE and CLAY, JJ., joined.

———————————

[*] The Honorable Helene N. White, Circuit Judge, took no part in the consideration or decision of this case.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.  Tony Davis was convicted by a Michigan jury of aiding and abetting a carjacking and of receiving and concealing stolen property.  He filed an application for leave to appeal his conviction with the Michigan Court of Appeals and the Michigan Supreme Court.  Both courts denied Davis's application for lack of merit. Davis then sought a writ of habeas corpus in federal court, pursuant to 28 U.S.C. § 2254, to challenge his state-court conviction for aiding and abetting a carjacking.  The district court denied Davis habeas relief.  A prior panel of this court reversed the judgment of the district court, but the full court vacated the panel decision and set the case for rehearing en banc.

We now consider the two grounds for relief that Davis raises in his habeas petition: (1) that there was insufficient evidence to support his conviction for aiding and abetting a carjacking, and (2) that his trial counsel was ineffective in refusing to call Marco Washington, who had already pled guilty to the actual carjacking, as a witness. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

In denying Davis's petition for a writ of habeas corpus under 28 U.S.C. § 2254, the district court provided the following summary of the relevant facts:

> Petitioner's convictions arise out of a carjacking that occurred in the parking lot of a restaurant in Detroit, Michigan.
>
> Clarence Franklin testified that, on March 27, 2002, at approximately 10:00 p.m., he stopped at the China One Restaurant, along with his fiancee Yvonne Depriest and 12-year-old daughter, Brittany Johnson.  Franklin parked his Lincoln Navigator.  He and his daughter went into the restaurant to get food and Depriest remained in the vehicle. After waiting for approximately ten minutes, Franklin got his food and left the restaurant.  As he was leaving, he saw Petitioner enter the restaurant.
>
> Franklin testified that Brittany sat in the backseat of the vehicle and he got into the driver's seat.  As he closed his door, Marco Washington approached the vehicle and ordered Franklin to [] exit the vehicle. Washington pointed a .9-mm weapon at Franklin and again ordered him out

of the vehicle. Franklin, Brittany and Depriest exited the vehicle. Washington drove the vehicle to the front of the restaurant. Petitioner exited the restaurant and got into the passenger seat of the Navigator. The Navigator was then driven from the parking lot.

Franklin's vehicle was located approximately two hours later. Franklin later identified Washington as the man with the gun and Petitioner as the person he saw inside the restaurant.

Yvonne Depriest testified that she waited in the Navigator while Franklin and Brittany went into the restaurant. She observed a gray Chevrolet Cavalier enter the parking lot. She saw someone exit the vehicle and enter the restaurant. When Franklin and Brittany returned to the car, Depriest heard someone cock a gun and demand that they exit the vehicle. They all exited the car. She testified that Petitioner then exited the restaurant and got into the passenger side of the vehicle.

Brittany Johnson testified that, as she and her father were waiting for their food, Petitioner entered the restaurant and asked for a glass of water. She identified Washington as the man who forced them out of their vehicle at gunpoint, and identified Petitioner as the man who entered the vehicle before it drove way.

Police Officer Scott Konczal of the Detroit Police Department testified the [sic] he and his partner responded to a call that someone had observed men stripping a Navigator on Novara Street in Detroit. Officer Konczal testified that he and his partner approached a garage located behind a vacant home. A man who the officers believed to be a lookout yelled something into the garage and fled. He was later apprehended and identified as Anthony Johnson. Officer Konczal saw a second person run from the garage. He gave chase and apprehended Marco Washington. Officer Konczal's partner arrested Petitioner inside the garage. The key to the Navigator was found in Washington's pocket.

Davis was originally charged in an Information with armed robbery and carjacking, to which he pled not guilty. After the close of evidence, the Information was amended to include an additional count of receiving and concealing stolen property valued at over $20,000. The state of Michigan tried Davis for the carjacking under an aiding-and-abetting theory. Davis did not testify in his own defense, and his defense counsel decided not to call Washington to testify despite Davis's request that Washington be called as a witness. The jury convicted Davis of carjacking and of receiving and concealing property valued at over $20,000, but found him not guilty on the armed-robbery charge.

After trial, with the help of newly appointed counsel, Davis moved the state trial court to dismiss his conviction on the bases that (1) there was insufficient evidence to support his conviction for aiding and abetting a carjacking, and (2) his trial counsel was constitutionally ineffective in refusing to call Washington as a witness. In an affidavit supporting his ineffective-assistance-of-counsel claim, Davis stated his belief that Washington would admit to being the sole perpetrator of the carjacking and that Davis was not involved in the offense.

The state trial court denied Davis's motion. It reasoned that

> [t]he evidence viewed in a light most favorable to the prosecution is sufficient to find that Defendant aided and abetted in the carjacking. Defendant arrived in the same car with the perpetrator, went into the restaurant and only ordered a cup of water while another man took the car at gunpoint. Defendant immediately got into the stolen vehicle and two and a half hours later was found dismantling it in a garage on the eastside of town. It is a reasonable inference from the undisputed evidence that Defendant preplanned his role in the carjacking thereby satisfying the intent element of aiding and abetting a carjacking. . . . The fact that Defendant deliberately got into the stolen vehicle and not the car in which he arrived indicates more than just mere presence and circumstance.

The court also denied Davis's claim that his trial counsel was ineffective, concluding that Davis had failed to show that "but for" his counsel's failure to call Washington, Davis "would have had a more positive outcome at trial."

Davis petitioned the Michigan Court of Appeals for leave to file an appeal on essentially the same bases that he presented to the trial court in support of his motion to dismiss his conviction. His request to appeal was denied in a one-sentence order. He next sought leave to appeal to the Michigan Supreme Court on the same grounds. That court also denied his request in a one-sentence order. Davis then filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Michigan, raising the same grounds for relief that he had presented in state court. The district court issued an opinion and order denying his petition. Davis now appeals that decision.

## II. ANALYSIS

### A. Standard of review

We review the district court's legal conclusions in a habeas proceeding de novo and its factual findings under the clear-error standard. *Awkal v. Mitchell*, 613 F.3d 629, 638 (6th Cir. 2010) (en banc). Our review of the Michigan state-court decisions in this case is governed by the following standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Section 2254(d) creates a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997)). A state-court decision is contrary to clearly established federal law only "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *Brown v. Palmer*, 441 F.3d 347, 350 (6th Cir. 2006) (quoting *Williams*).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

In addition, the factual findings of the state court are presumed correct unless the petitioner presents clear and convincing evidence to the contrary.  28 U.S.C. § 2254(e)(1).  "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (brackets omitted) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Under AEDPA, we review the last state-court decision to reach the merits of the particular claims being considered.  *Johnson v. Bagley*, 544 F.3d 592, 599 (6th Cir. 2008).  The Michigan trial court was the last state court to reach the merits of both Davis's sufficiency-of-the-evidence and ineffective-assistance-of-counsel claims.

## B.  Sufficiency of the evidence

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court set forth the standard for challenges based on sufficiency of the evidence, holding that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).  The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*  This standard is applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  And because both the *Jackson v. Virginia* standard and AEDPA apply to Davis's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA." *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).

To convict Davis of aiding and abetting the carjacking, the state of Michigan had to prove beyond a reasonable doubt that

> (1) the crime charged was committed by the defendant or some other person,
> (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of

the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement.

*Brown*, 441 F.3d at 351 (citing *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999)). "The phrase 'aiding and abetting' includes all words or actions by the defendant that might support, encourage, or incite the commission of the crime." *Id.* (citing *People v. Palmer*, 220 N.W.2d 393, 397 (Mich. 1974)). "An aider and abettor's state of mind may be inferred from all the facts and circumstances." *Carines*, 597 N.W.2d. at 135 (internal quotation marks omitted) (holding that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime" (internal quotation marks omitted)). "'Factors that may be considered [in determining intent] include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Id.* (internal quotation marks omitted). "But mere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory." *Brown*, 441 F.3d at 351 (citing *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. Ct. App. 1992)).

The evidence introduced at trial showed that (1) Davis arrived at the restaurant where the carjacking took place with Washington and an unidentified third person in a Chevrolet Cavalier; (2) Davis entered the restaurant while two of the victims were inside; (3) Washington stood outside the restaurant while the third person stayed in the Cavalier; (4) Davis did not order any food, but rather asked for a cup of water; (5) after the two victims inside the restaurant left to enter their Lincoln Navigator SUV and join a waiting passenger, Washington ordered all three of the victims out of the vehicle at gunpoint; (6) Davis stood at the window inside the restaurant while the carjacking was occurring; (7) Washington drove the stolen SUV a few feet toward the restaurant and stopped, at which point Davis immediately walked out and hopped into the SUV; (8) Washington then drove away from the scene with Davis as a passenger; (9) the third person who was in the Cavalier drove off after them; (10) roughly two-and-a-half hours later, Davis, Washington, and one other man were caught stripping the SUV in a dilapidated garage behind an abandoned house; (11) Davis was found lying flat on his back in the garage, working underneath the stolen SUV when the police arrived; and (12) the Cavalier in which Davis and Washington drove

to the restaurant and that was seen trailing the SUV from the restaurant was found near the garage.

Davis argues that this evidence permits nothing more than speculation that he played a role in the carjacking itself or that he had the requisite criminal intent. He asserts that "[t]hese facts established, at most, acquiescence and after-the-fact assistance, neither of which suffices for a conviction." Davis specifically relies on *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), to support his argument that the Michigan trial court's conclusion to the contrary was an unreasonable application of the *Jackson v. Virginia* standard.

In *Brown*, this court held that there was insufficient evidence to find the defendant guilty of aiding and abetting a carjacking. *Id.* at 351-53. The evidence in *Brown* showed that (1) Brown was parked in a car at a gas station; (2) the perpetrator exited the gas station's store and entered Brown's car for an unstated but apparently very brief period of time; (3) Brown then pulled forward to a gas pump and the perpetrator exited Brown's car; (4) the perpetrator immediately pointed a gun at a man attending to a Buick sedan, fired his gun in the direction of the man as the latter ran away, then entered the Buick and drove off; (5) Brown watched this occur from the driver's seat of his car, after which he attempted to drive off himself, but his tires skidded in the snow; (6) the Buick's owner, who had been walking from the gas station's store toward his car when the carjacking occurred, ran over to Brown's car and punched Brown in the face; (7) Brown immediately told the Buick's owner that he had just met the perpetrator a few minutes before and had simply offered to give him a ride; (8) aided by a friend, the Buick's owner grabbed Brown, pulled him from the car, and drove it to a police station to file a report; (9) Brown failed to retrieve his car afterwards; and (10) the perpetrator was never apprehended. *Id.* at 349.

Davis's reliance on *Brown* is misplaced because the factual differences between these two cases are material. First, there was no evidence that Brown arrived at the scene with the perpetrator. Brown in fact claimed that he had just met the man a few minutes earlier, presumably at the gas station itself. Here, Davis arrived at the scene with Washington, raising a compelling inference that they were previously acquainted.

Second, the behavior of Brown and Davis before and during the carjacking differed significantly. Brown engaged in no overt acts to indicate that he was involved in the crime.

He simply sat in his car and watched the crime unfold in front of him, to his professed shock and dismay. Davis, on the other hand, exited the Cavalier with Washington, entered the restaurant, failed to order any food, and stood at the window. Davis would have had no other way of so closely coordinating his actions with those of Washington if he had not been actively watching what was taking place. In short, Davis's behavior during the crime was far closer to that of a coconspirator than Brown's.

Another key difference between this case and *Brown* is that Davis fled the scene in the stolen vehicle. Because Davis arrived at the crime scene in the Cavalier, and the Cavalier subsequently followed the carjacked SUV, he could just as easily have departed in the same car. Davis instead purposely chose to enter the SUV that he had just seen his companion carjack.

For *Brown* to control the outcome in this case, Brown would have needed to arrive at the gas station with the perpetrator, watch the carjacking occur, and then enter the stolen Buick to drive off with the perpetrator. The fact pattern here is far more incriminating because it indicates that Washington was expecting Davis to enter the SUV (without any contemporaneous communication between them) that Washington had just stolen. The jury could easily conclude from this evidence that Davis was involved in the planning and execution of the carjacking. In contrast, the perpetrator in *Brown* did not wait for Brown to enter the carjacked Buick, did not drive it towards Brown, and did nothing after the crime to indicate that the two were working in tandem.

Another difference here is the lack of any proof to refute the circumstantial evidence that Davis and Washington were previously acquainted. Brown, in contrast, denied any advance knowledge about the carjacking and denied even knowing the perpetrator until they met at the gas station. Furthermore, Brown made these denials immediately after the crime and thus had little time to fabricate an exculpatory story.

Finally, Davis and Washington were found breaking down the stolen SUV shortly after the carjacking. Although this act by itself does not constitute aiding and abetting the carjacking, the overall sequence of events greatly strengthens the circumstantial case against Davis. Pieces of evidence are not to be viewed in a vacuum; rather, they are viewed in relation to the other evidence in the case. *See United States v. Welch*, 97 F.3d 142, 150-51

(6th Cir. 1996) (concluding that the circumstantial evidence "in its totality" was sufficient to find the defendant guilty beyond a reasonable doubt). Together with the other circumstantial evidence, the fact that Davis and Washington were continuously together from the time that they arrived at the scene of the carjacking until they were caught stripping the SUV—essentially sharing in the proceeds of the crime—is strong evidence of Davis's aiding and abetting the carjacking. *See People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999) (holding that a close association between the defendant and the principal, and evidence of flight after the crime, are factors that may be considered in determining intent in an aiding-and-abetting case); *People v. Allen*, 505 N.W.2d 869, 871 (Mich. Ct. App. 1993) ("Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.").

Given the material differences between this case and *Brown*, and the strong circumstantial evidence that Davis served as a lookout and/or helped plan the carjacking, we find no basis to grant Davis habeas relief in light of the AEDPA deference that we are obligated to apply. The key reason for granting habeas relief in *Brown* was that the evidence there was deemed too speculative for a jury to find Brown guilty beyond a reasonable doubt. *See Brown*, 441 F.3d at 352-53. But in light of AEDPA's deferential standard, *Brown* was a very close case. The present case, on the other hand, contains additional facts supporting the jury's verdict that make the verdict a far cry from being "objectively unreasonable." *See Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (explaining that a state court's decision must be "objectively unreasonable" to merit habeas relief); *see also White v. Steele*, 602 F.3d 707, 709-11 (6th Cir. 2009) (distinguishing *Brown* and denying relief on an aiding-and-abetting, sufficiency-of-the-evidence argument).

We further note that the *Jackson v. Virginia* standard is so demanding that "[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009) (internal quotation marks omitted). Adding to this extremely high bar are the stringent and limiting standards of AEDPA. Under AEDPA, we may reverse a state court's decision that correctly identified and applied the controlling Supreme Court precedent only if the application of that precedent was "objectively unreasonable," meaning "more than incorrect or erroneous." *Wiggins*, 539 U.S. at 520-21 (citations and internal quotation marks omitted);

*see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("It is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." (internal quotation marks omitted)).

The precise definition of "objectively unreasonable" remains elusive. *Maynard v. Boone*, 468 F.3d 665, 670-71 (10th Cir. 2006) (discussing the failure of most federal courts to further define the phrase "objectively unreasonable" and collecting cases). Several of our sister circuits, however, have attempted to clarify the term. The First Circuit has explained that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application," and that "'some increment of incorrectness beyond error is required.'" *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (quoting with approval *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

Taking a somewhat different tack, the Seventh Circuit has explained that a state court's decision is sustainable under AEDPA if it "is at least minimally consistent with the facts and circumstances of the case," *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997), or even "if it is one of several equally plausible outcomes," *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997), and that a decision is objectively unreasonable only where it is "well outside the boundaries of permissible differences of opinion," *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000) (explaining that a state court's decision is not unreasonable if it took the controlling standard "seriously and produce[d] an answer within the range of defensible positions"). The Tenth Circuit has similarly opined that "[i]t is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision," but instead "the state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard*, 468 F.3d at 671 (internal quotation marks omitted).

This court has not delved deeply into the issue, but one judge has indicated that where a state court makes "a close call" on a constitutional question, this "militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable." *Lopez v. Wilson*, 426 F.3d 339, 358 n.1 (6th Cir. 2005) (en banc) (Cole, J., concurring) (internal quotation marks omitted). Moreover, the Supreme Court has

recently explained that "[w]hen assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 130 S. Ct. 1855, 1864 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Accordingly, "'the more general the rule' at issue—and thus the greater the potential for reasoned disagreement among fair-minded judges—'the more leeway state courts have in reaching outcomes in case-by-case determinations.'" *Id.* (brackets omitted) (quoting *Yarborough*, 541 U.S. at 664). And the *Jackson v. Virginia* standard—requiring a court to allow for a range of rational factfinders and to view the evidence in the light most favorable to the prosecution—is exceedingly general. *Foxworth v. St. Amand*, 570 F.3d 414, 429 (1st Cir. 2009) (concluding that *Jackson v. Virginia* enunciates "a general standard"); *see also Wright v. West*, 505 U.S. 277, 308 (1992) (Kennedy, J., concurring) (identifying *Jackson v. Virginia* as enunciating "a general standard").

We must therefore give the Michigan trial court considerable leeway in the case before us. In light of the strong circumstantial evidence that Davis was involved in the planning and execution of the carjacking, at least one "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See Jackson v. Virginia*, 443 U.S. at 319; *see also United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010) ("Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." (internal quotation marks omitted)).

And when this case is given "double deference" through the lens of AEDPA, so that we are limited to reviewing whether the state trial court's decision was so objectively unreasonable as to be "beyond error," *see McCambridge*, 303 F.3d at 36 (citation omitted), or "outside the boundaries of permissible differences of opinion," *see Hardaway*, 302 F.3d at 762, or more than "clearly wrong," *see Maynard*, 468 F.3d at 671, we are unable to say that the decision is so far out of line with the very general standard set forth in *Jackson v. Virginia* as to warrant granting Davis habeas relief. We therefore conclude that the state trial court's decision to deny Davis's motion to dismiss his conviction was not objectively unreasonable.

**C. Ineffective assistance of counsel**

Because we have concluded that sufficient evidence was presented at trial to convict Davis of aiding and abetting a carjacking, we must now determine whether Davis's trial counsel was constitutionally ineffective. To establish the ineffective assistance of counsel, Davis must first show that his "counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This requires a showing that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Second, Davis must show prejudice by establishing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This is a high burden to meet:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (citation and internal quotation marks omitted).

Davis argues that we should review his ineffective-assistance-of-counsel claim de novo rather than under the "doubly deferential judicial review that applies to a *Strickland* claim evaluated under [AEDPA]." *See Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009). He first asserts that the Michigan trial court applied an improper standard in analyzing his ineffective-assistance-of-counsel claim. The state trial court held that Davis had not shown that "the failure to call the perpetrator who pled guilty to the carjacking was prejudicial to the extent that but for that deficiency, Defendant would have had a more positive outcome at trial, which is necessary to overcome the presumption of trial strategy."

It relied on the Michigan case of *People v. Julian*, 429 N.W.2d 615 (Mich. Ct. App. 1988), to reach this conclusion.

In *Strickland*, the Supreme Court held that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case" to succeed on a claim of ineffective assistance of counsel. *Id.* at 693. Davis seizes upon this language and argues that this is precisely where the Michigan trial court misapplied Supreme Court precedent. He argues that we should therefore review the prejudice prong of his ineffective-assistance-of-counsel claim de novo, relying on *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) ("When the state court issues a decision that is contrary to federal law, we review the merits of the petitioner's claim de novo."). For the reasons set forth below, we conclude that we do not need to address the prejudice prong of Davis's ineffective-assistance-of-counsel claim, and therefore need not decide which standard of review applies to this aspect of his claim.

Davis also argues that we should review the deficiency prong of the *Strickland* test de novo because the Michigan trial court did not address this prong. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (holding that the Supreme Court's review was "not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis"). Although the extent of the Michigan trial court's consideration of this issue is less than clear, we will analyze the deficiency prong of Davis's ineffective-assistance-of-counsel claim de novo because, even under that more liberal standard of review, we conclude that his counsel was not deficient.

Davis argues that his trial counsel was constitutionally ineffective in failing to call Washington as a witness, despite Davis's request to the contrary. He asserts that Washington would have testified that Davis had no knowledge of the carjacking and that Washington acted alone. But Davis's trial counsel explained to the state trial court why he decided not to call Washington as a witness. The trial record reads, in relevant part:

> My client has asked me to call Marco Washington as a witness and you know the issue of Marco Washington. I told [Davis] I didn't think it was a good idea to call someone that would be a codefendant in the minds of the jury who plead [sic] guilty. I think we agree on that. But more importantly, as you know, I have to tell the Prosecutor what my plans are. Ms. Dawson told me that if, in fact, Marco Washington got on the stand and

in essence exculpated Mr. Davis, that she would seek—I'm not saying she would obtain, but she would send [sic] a warrant for perjury.

Also, Mr. Washington, since he hasn't been sentence[d], still has the Fifth Amendment Right. Given that, I just want to put on the record that, in my opinion, I do not want to call Mr. Washington as a witness, and most importantly, what [sic] he realizes he has certain rights. He may exercise those rights and not testify. I don't want to get to that point, Judge. I just wanted to indicate that I'm not going to, as an officer of this court, call Mr. Washington.

These statements provide us insight into defense counsel's strategic decision not to call Washington as a witness. First, he explained that he did not want the jury to associate Davis with Washington given the fact that Washington had already pled guilty to the carjacking. And in light of the prosecutor's statement that she would seek to charge Washington with perjury if he testified on behalf of Davis, counsel was concerned that Washington would exercise his Fifth Amendment right to remain silent if called. The record thus reflects that counsel carefully considered calling Washington as a witness in Davis's defense and made the strategic decision not to have Washington testify. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

Davis has not produced any evidence that defense counsel failed to adequately investigate or consider the option of calling Washington to testify. Without proof to the contrary, we must assume that counsel adequately considered the possibility, but ultimately decided that the best strategy was not to present Washington's testimony. *See Carter v. Mitchell*, 443 F.3d 517, 532 (6th Cir. 2006) (holding that the defendant did not meet his burden under *Strickland* where he failed to produce any evidence that his counsel declined to investigate the defendant's background before deciding not to call family members to testify during the sentencing phase).

Davis relies on *Poindexter v. Booker*, 301 F. App'x 522 (6th Cir. 2008), among other cases, to support his argument that defense counsel was ineffective. In *Poindexter*, this court held that counsel, the same trial counsel that represented Davis in this case, was constitutionally ineffective because he failed to investigate possible alibi witnesses. The

evidence in that case showed that two alibi witnesses accompanied Poindexter to meetings with his counsel, one of whom later approached Poindexter's counsel about the possibility of testifying on Poindexter's behalf. *Id.* at 529. But Poindexter's counsel never interviewed either witness. When asked why he failed to make use of these potential witnesses, Poindexter's counsel responded: "I can't honestly give you an answer to that." *Id*. The court concluded that the "[f]ailure to investigate two alibi witnesses, particularly when the witnesses both personally offered to provide testimony beneficial to Poindexter, is therefore objectively unreasonable" and "not the product of sound trial strategy." *Id.*

But *Poindexter* is distinguishable from this case. Here, defense counsel offered several strategic reasons for not calling Washington to testify, unlike his failure to offer any reasons for not interviewing potential alibi witnesses in *Poindexter*. Davis's counsel did not want to link Washington, who had already pled guilty to the carjacking, with Davis. Further, counsel was concerned that Washington might choose to exercise his Fifth Amendment right to remain silent if called to testify. And unlike the possible alibi witnesses in *Poindexter*, who would have allegedly presented evidence that Poindexter was not even present when the crime occurred, Washington's testimony, as the district court noted, "would do nothing to explain [Davis's] presence at the restaurant, [Davis's] abandoning the vehicle in which he arrived at the restaurant, or his presence at the garage where the Navigator was being stripped."

Given the high level of deference that we must afford a defense counsel's strategic choices, we conclude that Davis has failed to "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). He has thus failed to satisfy *Strickland*'s deficiency standard. Because Davis failed to make the necessary showing of deficiency, his ineffective-assistance-of-counsel claim fails and we need not address the prejudice prong. *See id.* at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim.").

### III. CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

## CONCURRING IN PART AND DISSENTING IN PART

---

BOYCE F. MARTIN, JR., Circuit Judge, concurring in part and dissenting in part, in which Judge Stranch joins. I agree with the majority's conclusion that the district court properly denied Davis habeas relief with respect to his insufficiency of the evidence claim. However, I disagree with the majority's conclusion that the district court properly denied Davis habeas relief with respect to his ineffective assistance of counsel claim. I believe that the district court abused its discretion in failing to grant Davis an evidentiary hearing to allow him to further develop the factual basis for this claim. Thus, I would **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing.

The rules governing federal habeas relief provide that: "If the petition is not dismissed, the judge must review the answer, [and] any transcripts and records of state-court proceedings . . . to determine whether an evidentiary hearing is warranted." Rules Governing § 2254 Cases, Rule 8, 28 U.S.C.A. foll. § 2254. We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. *Dixon v. Houk*, 627 F.3d 553, 560 (6th Cir. 2010). However, several statutory provisions impose limitations on the discretion of federal habeas courts to take new evidence in an evidentiary hearing. If a prisoner has "failed to develop the factual basis of a claim in State court proceedings," then a federal court is prohibited from holding an evidentiary hearing unless the petitioner meets certain statutory requirements.[1] 28 U.S.C. § 2254(e)(2). Furthermore, "[b]ecause the deferential standards prescribed by [AEDPA] control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). The Supreme Court has recently clarified that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 US __, 131 S. Ct. 1388, 1398 (2011). However, in this case I believe that AEDPA does not apply and

---

[1] The United States has not challenged Davis's request for a hearing on this ground, and in any event Davis requested a hearing in state court and was diligent in attempting to document his claim.

both the deficiency prong and the prejudice prong of Davis's ineffective assistance claim are subject to de novo review.

The prejudice prong is subject to de novo review because the Michigan trial court, the highest court to reach this issue, analyzed it under an improper standard. The trial court held that Davis did not demonstrate ineffective assistance because he did not show that trial counsel's failure to call Washington "was prejudicial to the extent that but for that deficiency, [Davis] *would have had* a more positive outcome at trial, which is necessary to overcome the presumption of trial strategy." *People v. Davis*, No. 02-4943-02, slip op. at 1 (Mich. Cir. Ct. Nov. 15, 2004) (emphasis supplied). The Supreme Court, in contrast, has made clear that under the prejudice prong, Davis need only establish "*a reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984) (emphasis supplied). The Supreme Court emphasized that "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Id.* at 693. Rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Michigan trial court clearly applied the incorrect standard.[2] *Cf. West v. Bell*, 550 F.3d 542, 553 (6th Cir. 2008) (holding that the state court used the wrong standard for determining prejudice when it stated that the burden of proof was a preponderance of the evidence rather than a reasonable probability). A "state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Miller v. Stovall*, 608 F.3d 913, 922 n.7 (6th Cir. 2010) (citing *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). Thus, the prejudice prong of Davis's claim is subject to de novo review. *See id.* (holding that "we are 'unconstrained by § 2254(d)(1) because the state-court decision falls within that provision's 'contrary to' clause,' and our review is de novo" (citing *Williams*, 529 U.S. at 406)); *Dyer v. Bowlen*, 465 F.3d 280, 284 (6th Cir. 2006) ("When the state court issues a decision that is contrary to federal law, we review the merits of the petitioner's claim de novo.").

---

[2]The United States did not contest this point at oral argument.

The deficiency prong is subject to de novo review as well because the Michigan trial court failed to address this prong. The trial court's entire analysis of Davis's ineffective assistance claim reads:

> Further, Defendant has not demonstrated ineffective assistance of counsel. Defendant has not shown that the failure to call the perpetrator who pled guilty to the carjacking was prejudicial to the extent that but for that deficiency, Defendant would have had a more positive outcome at trial, which is necessary to overcome the presumption of trial strategy.

*Davis*, No. 02-4943-02, slip op. at 1. The Michigan trial court found that Davis failed to satisfy the prejudice prong, and it thus conducted no analysis on the deficiency prong. *Cf. Avery v. Prelesnik*, 548 F.3d 434, 438 (6th Cir. 2008) (court did "not find in the record evidence that the trial court seriously engaged in a complete *Strickland* prejudice analysis"). The review provisions required by section 2254(d) apply only where there has been an "adjudication on the merits" in a state court proceeding. *Cf. Cullen*, 131 S. Ct. at 1398 ("If an application includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies."). Thus, the deficiency prong is also subject to de novo review. *See Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (holding that the Supreme Court's review was "not circumscribed by a state court conclusion with respect to prejudice, as neither of the state courts below reached this prong of the *Strickland* analysis").

The question before us is thus whether the district court abused its discretion in failing to grant Davis an evidentiary hearing, with the understanding that both prongs of his ineffective assistance claim are subject to de novo review. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro*, 550 U.S. at 474. This Court has held that a habeas applicant is generally entitled to an evidentiary hearing if he "alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing." *Sawyer v. Hofbauer*, 299 F.3d 605, 610-11 (6th Cir. 2002) (internal quotation marks and citation omitted). There is no dispute that the state courts did not hold a full and fair evidentiary hearing. Because AEDPA does not apply to Davis's ineffective

assistance claim, and neither do the restrictions in *Pinholster*, I therefore consider whether Davis has alleged sufficient grounds for release and whether relevant facts are in dispute.

An evidentiary hearing might have allowed Davis to prove under the deficiency prong that "counsel's representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (internal quotation marks and citation omitted). It is objectively unreasonable for an attorney to make a decision to decline to call a defense witness "without first investigating [the witness], or at least making a reasoned professional judgment that such investigation was unnecessary." *Towns v. Smith*, 395 F.3d 251, 260 (6th Cir. 2005). On the record before us, it is unclear to what extent trial counsel investigated Washington or made a reasoned professional judgment that investigation was unnecessary. There is no record of trial counsel having actually spoken to Washington. Trial counsel explained during trial that he had three main reasons for his decision not to call Washington as a witness: (1) he did not want the jury to associate Davis with Washington given that Washington had already pled guilty to the carjacking; (2) he was concerned that Washington would exercise his Fifth Amendment right to remain silent if called; and (3) the prosecutor threatened to charge Washington with perjury if he testified. Only the first two reasons relate to Davis's interests as opposed to Washington's. Trial counsel's mere articulation of some basis for his decision does not establish that his performance was sufficient. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."). Here, it is not clear that trial counsel's reasoning was sound. It may have been unreasonable for trial counsel to presume that Washington's guilty plea would undermine Davis's case, because the parties did not dispute that Washington had been the principal carjacker. Furthermore, it may have been unreasonable for trial counsel to presume that Washington remaining silent would undermine Davis's case, because trial counsel did not appear to confirm that Washington would remain silent and could have avoided promising the jury that Washington would testify. On the record before us, there are serious questions as to whether his failure to call Washington could have been sound trial strategy. *Cf. Johnson v. Sherry*, 586 F.3d 439, 446 (6th Cir. 2009) (evidentiary hearing was warranted to determine if trial counsel's failure to object constituted deficient performance when no court had conducted an evidentiary hearing and it was difficult to see how the failure could have been strategic).

The majority repeatedly faults Davis—who was incarcerated and proceeding pro se—for not introducing evidence that trial counsel failed to adequately investigate or consider calling Washington. However, Davis was unable to gather and introduce such factual evidence without a hearing. Thus, an evidentiary hearing was necessary to determine whether trial counsel's failure to call Washington constituted deficient performance.

An evidentiary hearing also might have allowed Davis to prove under the prejudice prong "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, 131 S. Ct. at 787 (internal quotation marks and citation omitted). This court has repeatedly found prejudice resulting from trial counsel failing to investigate or present favorable witnesses. *See, e.g.*, *Bigelow v. Haviland*, 576 F.3d 284, 291-92 (6th Cir. 2009) (failure to investigate alibi witness); *Ramonez v. Berghuis*, 490 F.3d 482, 491 (6th Cir. 2007) (failure to present three favorable witnesses); *Stewart v. Wolfenbarger*, 468 F.3d 338, 357 (6th Cir. 2006) (failure to present alibi witness). Although I join the majority opinion regarding Davis's sufficiency of the evidence claim, both the original panel decision in this case and the separate dissent on this issue show that the claim presented a close question. Thus, the lack of overwhelming evidence of Davis's guilt provides support for a finding of prejudice. *See Strickland*, 466 U.S. at 696 (stating that a "verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). Furthermore, it was inappropriate for the district court to presume that a jury would not find Washington credible. *See, e.g.*, *Ramonez*, 490 F.3d at 490 (stating that "in the context of evaluating whether there is a reasonable probability that [a] witness's testimony . . . would have changed the outcome of the trial . . . our Constitution leaves it to the jury, not the judge, to evaluate the credibility of witnesses"). This is particularly true in the absence of an evidentiary hearing. *See Blackledge v. Allison*, 431 U.S. 63, 82 n.25 (1977) ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive." (internal quotation marks and citation omitted)); *cf. Petty v. Metro. Gov't of Nashville-Davidson Cnty.*, 538 F.3d 431, 435 n.1 (6th Cir. 2008) ("[C]redibility determinations are inappropriate for summary judgment."). Thus, an evidentiary hearing was also necessary to determine whether Davis could prove prejudice resulting from trial counsel's failure to call Washington.

Davis's ineffective assistance claim alleges sufficient grounds for release, and relevant facts are in dispute regarding both the deficiency and prejudice prongs. *Cf. Sawyer*, 299 F.3d at 610. Thus, I believe that the district court abused its discretion in failing to conduct an evidentiary hearing on this claim, and I would **VACATE** the judgment of the district court and **REMAND** for an evidentiary hearing.

_____

**DISSENT**

_____

KAREN NELSON MOORE, dissenting. The prosecution's theory in this case is a convenient one. The prosecution says that Tony Davis acted as a lookout while Marco Washington committed a carjacking on March 27, 2002. But, as the prosecution acknowledges, all Davis did was walk into a nearby restaurant before the carjacking, stand at a window in the restaurant with a glass of water, and leave with Washington after the carjacking. In other words, the prosecution's theory is that Davis was a lookout who never needed to sound the alarm, and it sought to prove Davis's guilt through speculation alone. "The web of inference[s] is too weak on these facts," however, "to permit any rational trier of fact, absent sheer speculation, to find *beyond a reasonable doubt*" that Davis acted in support of the impending carjacking. *United States v. Sliwo*, 620 F.3d 630, 637 (6th Cir. 2010) (internal quotation marks omitted).

To the contrary, the evidence presented by the prosecution here does not provide a reasonable basis for inferring that Davis was present for the specific purpose of acting as a lookout. If it did, then all that the prosecution would need to establish at trial in order to attain a conviction for aiding and abetting is proof that an individual was present at the scene of the crime and acquainted with the perpetrator. Under the standard of reasonable doubt, however, we must distinguish between unsubstantiated speculation and reasonable inference. Patrolling the border between the two is essential to avoid unreasonably applying the sufficiency-of-the-evidence standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). Because I believe that the state court has unreasonably applied the *Jackson* standard by permitting mere speculation to suffice in proving guilt, I respectfully dissent.

## I. BACKGROUND LAW

Following the standard set forth in AEDPA, the critical question in this case is whether the Michigan trial court's denial of Davis's claim of insufficient evidence was contrary to, or an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). I agree with the district court that the state court incorporated the proper federal standard, the sufficiency-of-the-evidence standard set out in *Jackson v. Virginia*, 443

U.S. 307, 309 (1979).  As a result, the state court's decision was not contrary to clearly established law.  I believe, however, that the state court's determination that there was sufficient evidence for a rational trier of fact to infer that Davis acted as a lookout was an unreasonable application of that federal standard.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt" of each element of the offense.  *Jackson*, 443 U.S. at 309; *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[W]e explicitly hold that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.").  This "doctrine requires more than simply a trial ritual," it requires "that the factfinder will rationally apply the standard to the facts in evidence."  *Jackson*, 443 U.S. at 316–17.  Nonetheless, "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt."  *Id.* at 317.  "[W]hen such a conviction occurs in a state trial, it cannot constitutionally stand."  *Id.* at 318.

As a safeguard, a court faced with a sufficiency-of-the-evidence claim must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319.  This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id.* at 324 n.16.  Furthermore, in a case governed by AEDPA, if the evidence is not sufficient to support a conviction, we must next "ask whether the state court was objectively unreasonable in concluding that a rational trier of fact could find [the defendant] guilty beyond a reasonable doubt."  *Stewart v. Wolfenbarger*, 595 F.3d 647, 653 (6th Cir. 2010) (internal quotation marks omitted).  *See also Williams v. Taylor*, 529 U.S. 362, 409 (2000) ("Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.").

In Michigan, a conviction for aiding and abetting a crime requires the state to prove beyond a reasonable doubt that

(1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended it when the defendant gave aid or encouragement.

*Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (citing *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999)). "Aiding and abetting" consists of all forms of assistance rendered to the perpetrator of a crime, including all words or deeds that might support, encourage, or incite the commission of a crime. *Carines*, 597 N.W.2d at 135. "Although intent is a required element for the aiding-and-abetting offense, intent may be inferred from circumstantial evidence." *Brown*, 441 F.3d at 351 (citing *People v. Wilson*, 493 N.W.2d 471, 476 (Mich. Ct. App. 1992)); *Carines*, 597 N.W.2d at 135 (holding intent may be inferred from all facts and circumstances). Several factors may be considered in determining intent, including "a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime." *Carines*, 597 N.W.2d at 135 (internal quotation marks omitted).

There are limits, however, to how far inferences can be stretched from circumstantial evidence. Significantly, "[m]ere presence, even with knowledge that an offense is about to be committed or is being committed, is insufficient to show that a person is an aider and abettor." *Wilson*, 493 N.W.2d at 476; *Brown*, 441 F.3d at 351. The Michigan Supreme Court has also held that "mere mental approval, . . . passive acquiescence or consent" are insufficient to find a person an aider and abettor. *Fuller v. Anderson*, 662 F.2d 420, 424 (6th Cir. 1981) (quoting *People v. Burrel*, 235 N.W. 170 (Mich. 1931)). "In other words, the accused must take some *conscious action* designed to make the criminal venture succeed in order to be guilty of aiding and abetting." *Id.* (emphasis added).

Finally, under Michigan law, "[a] person cannot be convicted as an aider and abettor on the basis that he was an accessory after the fact." *Hopson v. Foltz*, No. 86-1155, 818 F.2d 866 (table), 1987 WL 37432, at *2 (6th Cir. May 20, 1987) (citing *People v. Lucas*, 262 N.W.2d 662, 662–63 (Mich. 1978)). Aiding and abetting of the crime must occur before or during the commission of the crime. *People v. Smith*, Nos. 204474, 204476, 1999 WL 33453995, at *8 (Mich. Ct. App. Mar. 12, 1999).

A prior post-AEDPA habeas case from this court provides useful guidance. In *Brown v. Palmer*, this court, applying Michigan law, held that there was insufficient evidence that the defendant had aided and abetted carjacking.[1] 441 F.3d at 351–53. The facts presented at trial consisted of the following:

> (1) Brown was present before and during the carjacking, (2) he and the perpetrator were in the car together before the perpetrator committed the offenses, (3) he stared at the victims while the perpetrator fired the shots, (4) he never got gas even though he was parked near a gas pump, (5) he attempted to flee as soon as the perpetrator drove off in the car, and (6) he failed to contact the police to retrieve his car.

*Id.* at 351. The *Brown* court concluded that the evidence "clearly demonstrates that Brown was present at the scene and had some acquaintance with the perpetrator. Beyond that, however, the evidence pointing to Brown's guilt becomes quite speculative." *Id.* In addition, the *Brown* court reasoned that flight from the scene was insufficient to support a finding of guilt. *Id.* When a person flees from law enforcement, a jury may draw a reasonable inference of guilt, but when a person merely flees the scene of a crime, such a speculative leap ceases to provide reasonable evidence of guilt. *Id.* Thus, "[a]lthough the facts viewed in the light most favorable to the state may have created 'reasonable speculation' that Brown aided and abetted the carjacking and armed robbery," there were no facts "demonstrating that Brown in fact provided assistance or encouragement to the perpetrator." *Id.* at 352.

The *Brown* court also found persuasive two other cases from this court, both of which addressed similarly speculative evidence that was insufficient to support a conviction. In *Fuller v. Anderson*, the petitioner allegedly acted as a lookout while another person committed arson by throwing a Molotov cocktail at the victim's home. 662 F.2d at 421–23.

---

[1] In order to be clearly established law, the law relied on by the habeas petitioner must be law that was clearly established at the time the state court decision became final, not afterward. *Williams v. Taylor*, 529 U.S. 362, 380 (2000). Moreover, the law must be that "determined by the Supreme Court." *Id.* at 381–82. As we have observed,

> Although only Supreme Court case law is relevant under the AEDPA in examining what Federal law is "clearly established," the decisions of the United States Courts of Appeals may be informative to the extent we have already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court.

*Hill v. Hofbauer*, 337 F.3d 706, 716 (6th Cir. 2003).

Evidence was presented that the petitioner "stood guard," "turned his head from side to side more than twice," and ran away with the perpetrator after the arson. *Id.* at 424. Yet the *Fuller* court held that, although this evidence permitted *speculation* that the petitioner was involved in the crime, there was no evidence from which a jury could reasonably infer that the petitioner intended to burn the home. Thus, the evidence was "insufficient to establish beyond a reasonable doubt that Fuller took conscious action to aid [the perpetrator's] commission of arson." *Id.*

In *Hopson v. Foltz*, the petitioner was tried for aiding and abetting second-degree murder in Michigan. 1987 WL 37432, at *1. At trial, the government presented evidence that: the petitioner and victim were seen with two other individuals arguing in a bar when a comment was made to the victim implying a threat of serious injury; just prior to the shooting, the petitioner and victim were seen arguing on a street corner; the perpetrator arrived in a car and removed a gun from his trunk; several shots were fired; and the petitioner was observed leaving an alley and walking to his house where he appeared to hand something to someone inside. *Id.* The state theorized that the petitioner had taken spent shotgun shell casings to the individual in the house. *Id.*

Nonetheless, the *Hopson* court held that the testimony "indicates at most [that the petitioner] was present at the shooting, that he may have argued with the victim during the evening prior to the shooting, that he may have known that someone else intended to harm [the victim], and that he may have taken the empty shell casing after the shooting." *Id.* at *2. The court found that there was no proof that the petitioner acted in concert with the perpetrator or that he "did anything to support, encourage, or incite the commission of the crime." *Id.* The *Hopson* court therefore concluded that, although the petitioner's statements may have shown animus, they could not be construed as encouragement. *Id.* at *2. Furthermore, although taking the shell casings may have rendered Hopson an accessory after the fact, the evidence could not support a conviction as an aider and abettor. *Id.* The evidence, according to the court, was simply insufficient to establish guilt beyond a reasonable doubt. *Id.*

## II.  THE EVIDENCE

With these cases in mind, a close look at the circumstantial evidence in this case shows that the state court's application of *Jackson v. Virginia* to Davis's conviction was "objectively unreasonable." *Williams*, 529 U.S. at 409. The case against Davis comes down to evidence that Davis was present for the commission of the carjacking, was acquainted with the perpetrator, and was found working on the car after the crime. The prosecution adduced no evidence that Davis acted in a way that would indicate specifically that he functioned as a lookout. At most, the evidence indicates that Davis knew or had reason to know of the carjacking; it provides no basis, however, for a jury to conclude *beyond a reasonable doubt* that Davis did anything to assist the commission of the crime. Because "mere presence, or even knowledge, that a crime is about to be committed is insufficient to prove guilt under an aiding-and-abetting theory," *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006), the conviction violates due process. A contrary result cannot be reconciled with this court's prior decisions.

*Association*. Although the facts establish that Davis was at the scene, *Brown* makes clear that presence alone is not enough to infer participation. The majority attempts to distinguish *Brown* by pointing to the fact that Davis and Washington arrived at the scene together. From their arrival together, the majority derives "a compelling inference that [Davis and Washington] were previously acquainted." Maj. Op. at 9. As an initial matter, the defendant in *Brown* claimed that he had just met the perpetrator, and the prosecution could not prove otherwise because they never discovered the perpetrator's identity. *Brown,* 441 F.3d at 349, 353. The *Brown* court noted, moreover, that, "the evidence clearly demonstrates" that the defendant and perpetrator had "some acquaintance." *Id.* at 351. In any event, this factual distinction is not material. The fact that one man knows another does not permit a reasonable inference that the first *participated* in the second's scheme. Only by making a series of tenuous inferential jumps can *mere acquaintance* provide proof that an individual acted in support of the commission of another's crime.

The majority also decries "the lack of any proof to refute the circumstantial evidence that Davis and Washington were previously acquainted." *Id.* at 10. This, however, is simply an attempt to double-count the evidence of their acquaintance. Davis does not bear the

burden of disproving his guilt. Even if Davis were a lookout who simply never needed to sound the alarm, the prosecution must still prove that he in fact served as a lookout. Under the majority's opinion, an acquaintance passively present at the scene must prove that her innocent actions were in fact innocent.

The fact that Davis and Washington arrived at the scene together therefore does almost nothing to show that Davis acted as a lookout. It certainly is not enough to overcome reasonable doubt.

*Observation.* Nor is there evidence that Davis engaged in incriminating behavior while the carjacking was taking place. During the carjacking, the evidence establishes that Davis entered the restaurant, ordered water, and remained in the restaurant until the crime was over. The prosecution asserts that this is circumstantial evidence of Davis's role as a lookout. But the *Fuller* court determined that more is required to overcome reasonable doubt. In *Fuller*, testimony that the defendant stood near the crime scene and looked around for several minutes while watching the perpetrator commit the crime was insufficient to establish proof that he acted as a lookout. In this case, there is no evidence that Davis even looked around, much less that he signaled to Washington in any way.

Similarly, in *Brown*, evidence that the defendant stared at the crime as it unfolded was insufficient to support a finding of guilt. In this case, one of the victims testified that Davis stood at the window during the crime. The testimony does not identify which window Davis was standing near—the large window that forms part of the restaurant's facade or the service window inside the restaurant. The prosecution presented no testimony that Davis faced the parking lot or even looked in the direction of the crime scene. Nor did the prosecution suggest that Davis took any action to prevent anyone in the restaurant from leaving or seeing the crime taking place—*i.e.*, there was no evidence that Davis created a distraction. In any event, assuming that Davis was watching the crime from the large front window of the restaurant, we held these same facts in *Brown*—watching the crime as it unfolded—to be insufficient evidence of aiding and abetting.

*Coordination.* In the majority's view, Davis's actions during the carjacking show that Davis was able to "closely coordinate[]" his actions with Washington's because he was "watching the carjacking unfold." Maj. Op. at 9. In support of this notion, the majority

points out only that Davis exited the Cavalier at the same time as Washington and that Davis left the restaurant right after Washington committed the carjacking. To be sure, there is testimony that Washington drove up to the restaurant after the carjacking and that Davis left the restaurant and entered the stolen vehicle. Washington then drove the car away. This testimony permits the inference that Davis *was aware* that the carjacking had been committed. But that Davis knew the crime was committed after the fact says nothing about *what he did* in support of its commission. Indeed, there is no evidence that Davis did something particular to the role of a lookout. Without this evidence, the prosecution has not proved its case that Davis acted in support of the carjacking as opposed to his merely being present for and failing to object to the commission of the crime. Again, the majority here relies on evidence of association to infer guilt because there is no other evidence linking Davis to the actual planning or commission of the carjacking.

The majority also finds inferences to be drawn from the fact that "Davis fled the scene in the stolen vehicle" and he "purposely chose to enter the SUV that he had just seen his companion carjack," rather than the Cavalier. Maj. Op. at 9. In both *Brown* and this case, the defendant and perpetrator were seen together before commission of the crime, the defendant allegedly stood watch during the crime, and the defendant fled. Flight from the scene of a crime, however, is "fully consistent with [a defendant's] desire to avoid a confrontation with" anyone nearby. *Brown*, 441 F.3d at 352. It is thus "distinguishable from the inference of guilt that arises when one flees from a law enforcement officer." *Id.* Here, the victims of the crime were still in the parking lot. Consequently, the fact that Davis left the restaurant and got into the car does not establish that Davis was encouraging, supporting, or inciting the carjacking. It therefore would not permit any rational juror to conclude beyond a reasonable doubt that Davis acted as a lookout.

Indeed, the facts in *Brown* were more suggestive of guilt than the facts in this case. In *Brown*, the prosecution presented direct evidence that the defendant watched the crime take place and fled the establishment without using any of its services. Here, the evidence established only that Davis stood by a window and left with the defendant. Yet the *Brown* court granted the writ of habeas corpus, despite applying AEDPA deference, because "none of this evidence suggests that Brown assisted or encouraged the gunman in the . . . carjacking." *Brown*, 441 F.3d at 353. These facts alone could not prove that the

defendant acted as a lookout because merely being present at the scene was insufficient to establish beyond a reasonable doubt that Brown aided and abetted the crime. As in *Brown*, it is unreasonable to conclude that this evidence establishes beyond any reasonable doubt that Davis acted as a lookout.

*Post-Crime Conduct.* Finally, the fact that Davis was found stripping the car several hours after the crime does not reasonably lead to the conclusion that Davis encouraged Washington in the commission of the carjacking. This fact provides evidence that Davis was an accessory after the fact; however, assisting after the fact is not sufficient to find Davis guilty of aiding and abetting the carjacking crime itself. *See Hopson*, 1987 WL 37432, at *2 (holding that post-crime conduct does not support finding beyond a reasonable doubt that defendant aided crime). After-the-fact-assistance, without more, shows only that Davis was aware of, but merely acquiesced in, the carjacking by Washington. It therefore does nothing to remove the reasonable doubt of any rational juror concerning whether Davis actually was a lookout.

\* \* \*

Ultimately, the majority cannot identify precisely what Davis did in support of the carjacking. The majority states that a reasonable jury could find that "Davis served as a lookout and/or helped plan the carjacking." Maj. Op. at 11. At another point, the majority speaks of "the strong circumstantial evidence that Davis was involved in the planning and execution of the carjacking." *Id.* at 13. Surely a "strong" inference that he was "involved"—without a more precise explanation of his role in the offense—cannot suffice to show criminal liability. The majority's reasoning simply fails to focus on what the evidence actually shows about Davis's alleged acts in support of the crime of aiding and abetting the carjacking. This imprecision belies the difficulty in piling inference upon inference from unrevealing pieces of circumstantial evidence.

Taking the facts together in the light most favorable to the prosecution, there is reason to *speculate* that Davis acted as a lookout for Washington's crime; however, sheer "speculation" does not constitute "sufficient evidence" under *Jackson. Brown*, 441 F.3d at 352. This is especially so in view of precedent regarding innocent acts which are insufficient to support a conviction for aiding and abetting. Thus, no rational trier of fact could infer

beyond a reasonable doubt that Davis performed an act or provided encouragement before or during the commission of the carjacking—a necessary element of the charge of aiding and abetting. This case, therefore, is not one in which the state court's decision is "at least minimally consistent with the facts and circumstances of the case," *Hennon v. Cooper*, 109 F.3d 330, 335 (1st Cir. 1997), nor is it "one of several equally plausible outcomes," *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997). Rather, it is "so inadequately supported by the record . . . as to be unreasonable." *Maynard v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006) (quoting *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006)).

I believe that the inferences in this case are insufficient to permit any rational juror from finding that Davis acted as a lookout. Were there at least some evidence that Davis did something particular to the role of a lookout, then it would be appropriate to deny relief. Because such evidence is not present in this case, I respectfully dissent.