NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0360n.06

Case No. 20-5299

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Aug 30, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| DEANGELO MONTEZ MOODY, | ) | |
| Petitioner - Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) ) | |
| MIKE PARRIS, Warden, | ) ) | |
| Respondent- Appellee. | ) ) ) | OPINION |

Before: SILER, COLE, and NALBANDIAN, Circuit Judges.

NALBANDIAN, J., delivered the opinion of the court in which SILER, J., joined. COLE, J. (pg. 20), delivered a separate concurring opinion.

NALBANDIAN, Circuit Judge. DeAngelo Moody was part of a drive-by shooting that left a 16-year-old girl dead. A Tennessee jury convicted him of first-degree murder, and the court sentenced him to life. After his direct appeals failed, he filed for post-conviction relief, arguing that his attorney provided ineffective assistance. But the Tennessee courts denied him relief, and he turned to federal court. His federal habeas petition repeated his ineffective-assistance claim and asserted a few defaulted claims that he asked the court to excuse on actual-innocence grounds. The district court denied him relief, and we **AFFIRM**.

**I.**

**A.**

In April 2009, Moody went for a drive with four friends in his mother's car. Ortego Thomas and Quontez Caldwell, Moody's half-brothers, sat in the back alongside Moody. An

unknown individual drove the car[1] and Martez D. Matthews sat shotgun.  At some point, the group

spotted two men—Christopher Bridges and Deandre Williams—walking.  As the group drove past

Bridges, Thomas stated, "There go somebody we beefin' with."  (R. 7-4, Caldwell's Test., PageID

254.)  But by that point the car had driven past Bridges and Williams.  So the driver continued to

the end of the block, wheeled the car around, and drove by the two men again.  This time, a few

men in the car opened fire on the two men walking.

But the bullets missed their targets.  They instead penetrated the home of Inez Johnson,

striking her 16-year-old daughter, Loren, in the lungs.  Inez called for help, but it was too late.  By

the time the paramedics arrived, Loren was bleeding profusely and was unresponsive.  So the

paramedics took her to the emergency room where she was pronounced dead.

**B.**

The State charged Moody, Matthews, and Thomas with first-degree murder and

employment of a firearm in commission of a felony.  It tried Moody and Matthews together but

severed Thomas's case.

At trial, the State presented two theories to the jury.  The first cast Moody and Matthews

as the shooters.  The second, was that even if they did not fire the weapons, the two men were

criminally responsible for the shooting.[2]  As proof, the State presented evidence that the car used

---

[1] Moody was initially driving the car when he and Thomas went to pick up Caldwell.  At some point though Moody gave up his driver's seat to the unknown individual, who was driving when the shooting occurred.

[2] By way of background, under Tennessee criminal responsibility, "presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *State v. Dorantes*, 331 S.W.3d 370, 386 (Tenn. 2011) (internal quotation omitted).  And "no specific act or deed need be demonstrated," only that "the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Id.*

in the shooting belonged to Moody's mother,[3] that the bullet casings collected from the scene came from two guns, one of which belonged to Matthews, and that a hat collected from the scene had Matthews' DNA.

Caldwell's testimony was the linchpin of the State's case. He testified at length about what happened on the day of the shooting, the seating arrangement in the car, and that it was Thomas who said, "There go somebody we beefin' with." (R. 7-4, Caldwell's Test., PageID 254.) As for who did the shooting, Caldwell pointed the finger at Matthews, Thomas, and Moody.

The court instructed the jury on the elements of first-degree felony murder and employment of a firearm during the commission of a crime. The court also instructed the jury on the elements of criminal responsibility. After it heard the evidence, the jury convicted Moody of first-degree murder but acquitted him of the employment-of-a-firearm charge. Moody appealed, challenging the sufficiency of the evidence against him. But the Tennessee Court of Criminal Appeals (TCCA) affirmed the judgment, and the Tennessee Supreme Court denied his application to file an appeal. *State v. Moody*, No. M2011-01930-CCA-R3-CD, 2013 WL 1932718, at *9, 14 (Tenn. Crim. App. May 9, 2013).

## C.

With a failed direct appeal, Moody petitioned for post-conviction relief in state court. He raised several grounds for relief, including ineffective assistance of counsel. Moody claimed that his attorney, Mark Kovach, rendered ineffective assistance by not interviewing or calling Thomas as a witness.

---

[3] In his brief, Moody claims that there was inconsistent testimony about the car at trial. Our review of the record shows otherwise. True, some witnesses gave differing descriptions from memory. But all witnesses who were asked about the car identified it as the car registered to Moody's mother.

The trial court found Moody's claims plausible enough to hold a hearing. At the hearing, Thomas testified that Moody was not involved in the shooting and "didn't have nothing to do with the situation." (R. 7-18, Thomas's Test., PageID 1289.) Thomas said that only he and Caldwell shot at the men and emphasized that Moody "wasn't doing no shooting." (*Id.*) What's more, Thomas said that Moody "didn't know what was going on" because "Caldwell was telling [them] to take him home," and so it was Caldwell who "was giving [them] directions." (*Id.*) Finally, Thomas explained that he wanted to testify at Moody's trial but his attorney "wouldn't let [him]." (*Id.* at PageID 1291.)

Kovach testified too. First, he explained why he didn't call Thomas as a witness. Kovach shared offices with Thomas's attorney, Ashley Preston, and they discussed the case "quite a bit." (R. 7-18, Kovach's Testimony, PageID 1308–09.) From these discussions, he explained that he would have been "shocked" if she let Thomas testify and implicate himself in murder. (*Id.*) Kovach also noted that because Thomas was Moody's co-defendant, he couldn't compel him to testify.

The hearing ended favorably for Moody. The trial court found that Kovach's failure to call Thomas as a witness, among other things, was deficient performance and that Moody was prejudiced. As a result, it granted Moody relief and ordered a new trial. But Moody's victory proved short-lived. When the TCCA considered the case, it reversed, finding that Kovach provided adequate legal representation. *See Moody v. State*, No. M2015-02424-CCA-R3-PC, 2017 WL 829820, at *1 (Tenn. Crim. App. Mar. 2, 2017). So the TCCA overturned Moody's post-conviction relief, *id.* at *11, and the Tennessee Supreme Court again denied Moody's appeal.

4

**D.**

With no luck in the state courts, Moody turned to the federal ones. He filed a pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254. He raised several claims but recognized that, except for his ineffective-assistance claim, he had defaulted on all of them.[4] *Moody v. Parris*, No. 3:17-cv-01452, 2020 WL 1061950, at *13 (M.D. Tenn. Mar. 5, 2020). Still, he urged the court to excuse his default based on actual innocence.[5] *Id.* at *18.

The district court rejected all of Moody's claims. Relevant here, the court held that the TCCA's decision didn't unreasonably apply federal law. *Id.* at *16–17. Kovach's close contact with Thomas's lawyer made his decision not to interview or call Thomas as a witness reasonable. *Id.* at *17. It also found that Kovach's decision didn't prejudice Moody. *Id.* at *17–18. Finally, the court rejected Moody's actual-innocence claim. *Id.* at *18. As a result, it denied Moody's habeas petition but issued him a certificate of appealability on both questions, which Moody now brings. *Id.* at *19–20.

---

[4] The defaulted claims Moody raised were: (1) that there was insufficient evidence to support his conviction; (2) that his trial counsel was ineffective for failing to move to sever his trial, move to dismiss all charges after the jury acquitted him of the firearm charge, and challenge the constitutionality of his sentence under *Miller v. Alabama*, 567 U.S. 460 (2012) and *Graham v. Florida*, 560 U.S. 48 (2010); (3) that the trial court erred in not acting as a thirteenth juror; (4) that the trial court erred in failing to allow him to retain counsel of his choice; and (5) that the trial court sentenced him unconstitutionally in light of *Miller* and *Graham*.

[5] In his appellate brief, Moody references an affidavit from Thomas's attorney, Ashley Preston. But, as Moody correctly notes, this evidence was not before the TCCA. So we cannot take it into account when considering Moody's claims. *See Cullen v. Pinholster*, 563 U.S. 170, 184–85 (2011).

Moody also presents evidence from his coram nobis hearing where Caldwell testified again, this time favorably. But that evidence, as Moody notes, was not considered by the district court. So this evidence too is not relevant to our discussion.

**II.**

We review the district court's denial of Moody's habeas petition de novo. *Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 826 (6th Cir. 2019). This review governs Moody's actual innocence claim. *See Moore v. Mitchell*, 708 F.3d 760, 774 (6th Cir. 2013).

A different standard of review, provided by the Antiterrorism and Effective Death Penalty Act (AEDPA), governs Moody's ineffective-assistance claim. *See* 28 U.S.C. § 2254(d). Because the TCCA decided that claim, AEDPA poses a "formidable barrier to federal habeas relief . . . ." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). Under AEDPA, we may only reverse a state court's decision if it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or . . . decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Fitzpatrick v. Robinson*, 723 F.3d 624, 633 (6th Cir. 2013). And a state court unreasonably applies federal law if it "identifies the correct governing legal principle" but "unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Fitzpatrick*, 723 F.3d at 633.

But a decision is not unreasonable just because we would have decided the issue differently. *Wood v. Allen*, 558 U.S. 290, 301 (2010). As the Supreme Court has explained, "an *unreasonable* application of federal law is different from an *incorrect* application." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation omitted). AEDPA is "not a substitute for ordinary error correction." *Id.* at 102–03. So if "fairminded jurists could disagree on the correctness of the state court's decision," then the decision was reasonable, and this Court leaves

it undisturbed. *Id.* at 101 (internal quotations omitted). This is "meant to be" a "difficult [standard] to meet." *Id.* at 102.

Further, in determining whether a state court's decision is an unreasonable application of clearly established law, we "look only to the holdings of the Supreme Court's decisions as of the time of the relevant state court decision." *Moore*, 708 F.3d at 775. The decisions of the lower courts are only relevant in determining "whether a legal principle had been clearly established," but they do not by themselves establish federal law. *Id.*

## III.

With these standards of review in mind, we turn to the merits. On appeal, Moody makes two claims. First, he argues that his attorney, Kovach, rendered ineffective assistance. And second, he urges us to excuse his procedurally defaulted claims based on actual innocence. We consider each in turn.

## A.

We start with the ineffective-assistance-of-counsel claim. To succeed, Moody must show that his attorney's performance was "deficient" in a way that "prejudiced" him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is "deficient" if it "fell below an objective standard of reasonableness." *Id.* at 688. And a defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Strickland*'s standard is a high bar to meet. *Harrington*, 562 U.S. at 105. As the Supreme Court has explained, "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Id.* at 110 (internal quotations omitted). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning

7

of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. So we are "highly deferential" to an attorney's decisions and apply a "strong presumption" that his representation fell within "the wide range of reasonable professional assistance." *Harrington*, 562 U.S. at 104–05 (internal quotations omitted). Indeed, there are "countless ways to provide effective assistance in any given case." *Id.* at 106 (quoting *Strickland*, 466 U.S. at 689). So "surmounting *Strickland*'s high bar is never an easy task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

And because this is an AEDPA case, the bar is even higher. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009). *Strickland* requires deference to counsel and AEDPA requires deference to the state court. And so our review is "doubly deferential." *Id.* at 123. The question is not whether counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101.

**1.**

Take the deficient-performance prong. Moody argues that Kovach's representation was deficient by not interviewing Thomas or calling him as a witness. The TCCA rejected both claims. *Moody*, 2017 WL 829820, at *10. For the reasons below, we find that its decision was not an unreasonable application of federal law.

In reviewing the TCCA's decision, we begin "with the premise that under the circumstances, the challenged actions might be considered sound trial strategy." *Cullen v. Pinholster*, 563 U.S. 170, 191 (2011) (cleaned up). In doing so, we "indulge [the] strong presumption" that an attorney "made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 196 (alteration in original) (internal quotations omitted). That is, we must "affirmatively entertain the range of possible reasons [Moody's] counsel may have had

for proceeding as [he] did." *Id.* (internal quotations omitted). And an attorney's "strategic choices made after thorough investigation of law and facts" are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.

Consider first Kovach's decision not to call Thomas as a witness. The TCCA found this decision reasonable for three reasons. *Moody*, 2017 WL 829820, at *10. First, Kovach's decision was based on the conversations he had with Thomas's attorney, Ashley Preston. *Id.* Second, it was reasonable for Kovach to believe that a co-defendant charged with first-degree murder wouldn't incriminate himself. *Id.* And third, Thomas's testimony added little value but was easily impeached. *Id.* Each of these reasons is sufficient to show that Kovach made a reasonable decision not to call Thomas as a witness.

Kovach explained that he shared office spaces with Preston and they talked about the case "quite a bit." As Kovach pointed out, he was going to trial first, and so Preston asked for his opinion on different aspects of the case. From these conversations, Kovach concluded that he would have been "shocked" if Preston let Thomas testify and admit to first-degree murder. Indeed, Thomas's testimony confirmed this. He explained that he wanted to testify at Moody's trial but Preston "wouldn't let [him]." (R. 7-18, Thomas's Test., PageID 1291.) Given the strong reasonableness presumption that we must afford an attorney, we cannot say that Kovach's decision was unreasonable, especially in light of the deference we accord to the TCCA. After all, "[u]nlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington*, 562 U.S. at 105.

Moody claims that Kovach's decision not to call Thomas as a witness wasn't based on any actual communications between him and Preston. But Moody offers little evidence for this claim.

All he says is that Kovach's decision was based on silence from Thomas's attorney. Not so. Moody doesn't dispute that Kovach had multiple conversations with Preston about the case. And it is from these conversations that Kovach concluded she wouldn't have let Thomas testify and incriminate himself. And, again, Thomas himself confirmed this.

And even if Preston never told Kovach about her willingness to have Thomas testify, Kovach could still make that reasonable inference based on their conversations. If, for example, she had discussed her defense strategy or discussed the problem certain evidence posed, then an experienced attorney could conclude she didn't want Thomas to implicate himself in murder. So this wasn't a case in which, as Moody claims, Kovach was a "potted plant" waiting for Thomas's attorney to come to him. Regardless of whether Kovach's decision "deviated from best practices or [the] most common custom," it did not "amount[] to incompetence," and *Strickland* requires us to defer to that decision. *Harrington*, 562 U.S. at 105. So the TCCA's deference was not an unreasonable application of *Strickland*, and Moody hasn't pointed to a Supreme Court case in which an attorney's decision not to call a witness was found unreasonable after multiple conversations with the witness's attorney.[6]

---

[6] Throughout his brief, Moody cites almost exclusively circuit precedent. But as the Supreme Court has made clear, circuit precedent doesn't establish clearly established law and cannot be used to show that the state court's application of federal law was unreasonable. *See Parker v. Matthews*, 567 U.S. 37, 48 (2012) ("The Sixth Circuit also erred by consulting its own precedents, rather than those of this Court, in assessing the reasonableness of the Kentucky Supreme Court's decision.").

The only Supreme Court case that Moody cites is *Porter v. McCollum*, 558 U.S. 30 (2009). But in *Porter* the state court didn't decide the deficiency prong, so the Supreme Court was applying *Strickland* de novo. *See Porter*, 558 U.S. at 39. And as the Supreme Court has held, non-AEDPA cases, where the Court was reviewing *Strickland* de novo, "offer no guidance with respect to whether a state court has *unreasonably*" applied federal law. *See Cullen*, 563 U.S. at 202. So even *Porter* is of no help. And even if *Porter* could offer guidance, it is distinguishable because the attorney there did not "even take the first step of interviewing witnesses or requesting records."

And there's more. The TCCA provided two other reasons why Kovach's decision was reasonable: (1) Kovach couldn't compel Thomas, who was charged as a co-defendant, to testify and (2) Thomas's testimony added little value and he was easily impeached. Reasonable jurists can reach the same conclusion. For instance, in *Davis v. Lafler*, we held that it was reasonable for an attorney not to call a would-be co-defendant based on similar reasons. *See* 658 F.3d 525, 537 (6th Cir. 2011) (en banc).[7]

So too here. Thomas was a would-be co-defendant, so he could have exercised his right to remain silent. His testimony, as explained below, added little. And his impeachment would have reflected badly on Moody. *See United States v. Staples*, 410 F.3d 484, 489 (8th Cir. 2005) (citing *Lema v. United States* 987 F.2d 48, 54 (1st Cir. 1993)) (explaining that "there is considerable risk inherent in calling any witness because if the witness does not hold up well on cross-examination, the jurors might draw unfavorable inferences against the party who called him"). Thus, Kovach's

---

558 U.S. at 39. But as explained below, Kovach talked to Thomas's attorney before ruling Thomas out as a witness. *Porter* does not show that this wasn't a reasonable investigation.

[7] Although not necessary to our holding, we note that with regard to counsel's performance, this case is similar to our decision in *Davis*. There we held that a defense counsel's strategic decision for not calling a co-defendant as a witness was reasonable because the co-defendant (1) could have exercised his right to remain silent, (2) would have added little value with his testimony, and (3) could have reflected badly on the defendant (given that the co-defendant had pleaded guilty). *Davis*, 658 F.3d at 538. We acknowledge, as noted above, that the Supreme Court has clarified that under AEDPA, we cannot use lower-court decisions to determine what is unreasonable under "clearly established" federal law. *Parker*, 567 U.S. at 48–49. The Supreme Court has not held, however, that lower-court decisions are irrelevant to whether the law is not "clearly established." Moreover, albeit in a different circumstance, we have held that lower-court opinions are relevant to show that there is not "clearly established" federal law. *Miller v. Colson*, 694 F.3d 691, 698 (6th Cir. 2012) (citing *Baranksi v. Fifteen Unknown Agents of Bureau of ATF*, 452 F.3d 433, 449 (6th Cir.2006)) ("[D]isagreement among the circuit courts is evidence that a certain matter of federal law is not clearly established."), *cert. denied*, 569 U.S. 1007 (2013); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) ("Divergent approaches among the lower courts can reflect a lack of guidance from the Supreme Court and signal that federal law is not clearly established."), *cert. denied*, 139 S. Ct. 78 (2018).

11

decision was based on several "strategic choices" and is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. At the very least, "we cannot say that the state court's application of *Strickland*'s attorney-performance standard was objectively unreasonable." *Bell v. Cone*, 535 U.S. 685, 702 (2002).

What about Kovach's failure to interview Thomas? The TCCA held that Kovach's decision was reasonable because Preston never suggested she would let Thomas speak with Kovach. *Moody*, 2017 WL 829820, at *10. The TCCA's conclusion was not an unreasonable application of federal law.

Kovach's decision to keep Thomas off the witness stand meant that he had no duty to interview him. True, *Strickland* requires an attorney "to make reasonable investigations." *Strickland*, 466 U.S. at 691. But counsel isn't required to "investigate lines of defense that he has chosen not to employ at trial." *Id.* at 681. And so if counsel "make[s] a reasonable decision that makes particular investigations unnecessary," he "need not pursue an investigation that would be fruitless." *Harrington*, 562 U.S. at 106, 108. As explained, Kovach made a reasonable decision not to call Thomas as a witness, so he did not have to interview him. *See Kendrick v. Parris*, 989 F.3d 459, 471 (6th Cir. 2021) ("[T]he Sixth Amendment does not require an attorney to interview a witness personally when he reasonably believes that doing so is unnecessary.").

Moody argues that Kovach couldn't have decided not to call Thomas without first interviewing him. If Kovach can do this, Moody continues, then an attorney's decision not to interview a co-defendant would never be deficient. When challenged, the attorney could always say he didn't plan to call the co-defendant as a witness. We disagree.

Moody's argument paints with too broad a brush. As we've explained, *Strickland* held that "counsel need not investigate lines of defense that he has chosen not to employ at trial." *Strickland*,

12

466 U.S. at 681. And Moody has pointed to no Supreme Court precedent that requires an attorney to first interview a witness before deciding not to call them to the stand. *See Kendrick*, 989 F.3d at 471 (rejecting a similar argument because "Supreme Court precedent" doesn't "clearly establish[] such a specific investigatory obligation" to interview a witness if doing so is unnecessary). And this rule does not lead to the slippery slope Moody suggests. That's because the attorney's decision not to call a witness must be reasonable. Sometimes, an attorney's decision will be reasonable only if he interviews the witness; other times, it won't. *See Cullen*, 563 U.S. at 195 (explaining that "*Strickland* itself rejected the notion that the same investigation will be required in every case"). Because Kovach's decision not to call Thomas as a witness was reasonable, Moody's case falls in the latter category.

Finally, Moody argues that the TCCA's decision was unreasonable because, without interviewing Thomas, Kovach couldn't have known what he would say. This may be true in some cases, but not here. As explained, Thomas was represented by Preston, and Kovach had multiple conversations with her. Kovach's decision wasn't based on his personal belief but based on these conversations with Preston. The TCCA found these conversations enough to defer to Kovach's judgment. And without Supreme Court cases that say otherwise, we defer to it under AEDPA.

In sum, Moody hasn't met his burden of showing that the TCCA unreasonably applied *Strickland*'s deficiency prong to his case.

**2.**

Next, we turn to *Strickland*'s prejudice prong. The TCCA determined that even if Kovach's performance were deficient, Moody wasn't prejudiced by the decision not to call Thomas as a witness. *Moody*, 2017 WL 829820, at *10. Again, we find its decision reasonable.

Prejudice requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. We ask whether it is "reasonably likely the result would have been different" absent counsel's deficiency. *Harrington*, 562 U.S. at 111–12 (internal quotation omitted). And "[t]he likelihood of a different result must be substantial, not just conceivable." *Id.* at 112. In other words, if the evidence "would barely have altered" the outcome, then there is no prejudice. *See Strickland*, 466 U.S. at 700. Here, it was reasonable for the TCCA to find that Moody's "evidence of prejudice," namely Thomas's testimony, "fell short of this standard." *Harrington*, 562 U.S. at 112.

To begin, Thomas's testimony was cumulative. As the TCCA noted, his testimony boiled down to Moody not firing a weapon. *Moody*, 2017 WL 829820, at *10. But that evidence was already presented to the jury. After all, the jury found Moody not guilty of the firearm charge. *Id.* As Kovach explained in the post-conviction hearing, the fact that Moody wasn't the shooter "was apparent from discovery." (R. 7-18, Kovach's Test., PageID 1308.) And even the post-conviction trial judge said that Thomas's testimony "mirror[ed] the jury's verdict." *Moody*, 2017 WL 829820, at *9. So the TCCA's conclusion that Thomas's testimony would not have changed the verdict was reasonable.

What's more, Thomas's testimony did not "directly challeng[e] other" evidence in the case. *Harrington*, 562 U.S. at 112. The TCCA found that there was enough circumstantial evidence for the jury to convict Moody under a theory of criminal responsibility. *Moody*, 2017 WL 829820, at *10. Recall that under criminal responsibility, "presence and companionship with the perpetrator of a felony before and after the commission of the crime are circumstances from which an individual's participation may be inferred." *State v. Dorantes*, 331 S.W.3d 370, 386 (Tenn. 2011).

14

And that "no specific act or deed need be demonstrated," only that "the defendant in some way knowingly and voluntarily shared in the criminal intent of the crime and promoted its commission." *Id.* Here, Thomas's testimony does little to contradict the circumstantial evidence of criminal responsibility. For example, Thomas testified that Moody was in the car during the shooting. He confirmed that Moody would have known there were guns in the car before they went out—Thomas had his gun and there were guns under the seat of the car. And Thomas did not contradict the other evidence in the case. He said nothing about the car being registered to Moody's mother nor did he explain why Moody gave up the driver's seat. And he also never said that Moody tried to stop the shooting in the time the car turned around. So Thomas's testimony does nothing to contradict the "sufficient conventional circumstantial evidence pointing to [Moody's] guilt." *Harrington*, 562 U.S. at 113.

Finally, the TCCA reasonably held that Moody wasn't prejudiced because Thomas's testimony was readily impeached. *Moody*, 2017 WL 829820, at *10. Thomas admitted he gave inconsistent testimony to the police. At first, he told the police that he was not there. Later, he confessed that he was involved and fired a gun. Thomas's testimony was thus of questionable value and doesn't show a reasonable probability that the jury's verdict would have changed. *Cf. Cullen*, 563 U.S. at 201 (finding no prejudice where the evidence was of "questionable mitigating value").

Given that Thomas's testimony was cumulative, that he offered little to contradict the circumstantial evidence, and that his testimony would have been discredited, we cannot say that the TCCA unreasonably applied *Strickland*'s prejudice prong.

Moody's counterarguments are unavailing. First, he rejects the conclusion that Thomas's testimony was cumulative. As he tells it, Thomas's testimony does more than show that Moody

didn't fire a weapon; it also shows he didn't direct the car or point out Bridges. But this too is cumulative. The evidence at trial made it clear that it was Thomas, not Moody, who pointed out Bridges. And there was also evidence that Moody wasn't driving the car or directing it.[8] So Thomas's testimony added nothing in that respect.

Next, Moody argues that the TCCA unreasonably applied *Strickland* when it assumed that a jury would not credit Thomas. He points to our decision in *Bigelow* and argues that we have held that where the evidence boils down to a credibility contest, the defendant is prejudiced. *See Bigelow v. Haviland*, 576 F.3d 284, 291 (6th Cir. 2009). But *Bigelow* is not Supreme Court precedent, so it cannot show that the TCCA unreasonably applied clearly established federal law.[9] *See Parker v. Matthews*, 567 U.S. 37, 48 (2012). And the TCCA concluded that the jury would have likely not credited Thomas. This was a reasonable decision given his prior inconsistent statements. In any event, this wasn't the only rationale for the TCCA's decision. So we will not disturb the TCCA's conclusion.

At bottom, the jury heard the evidence and found that Moody was guilty of one charge (first-degree murder) but not the other (employment of a firearm). Thomas's testimony would not

---

[8] Moody claims that Thomas would have testified that Moody had no reason to know what's going on. The TCCA held that this aspect of the testimony would have been inadmissible speculation. But Moody rejects that conclusion, claiming it is "not speculation for a witness to testify about the objective, observable circumstances that occurred before, during, or after an event." (Appellant's Br. at 55.)

But even if Moody is right, he isn't entitled to relief. If the TCCA is wrong that Thomas's testimony is inadmissible speculation, that would be an error of state law. And "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). In any event, the aspects of Thomas's testimony that Moody claims are otherwise admissible—the "observable circumstances"—are, as explained, cumulative.

[9] In any event, *Bigelow* is distinguishable. There, the state had no evidence tying the defendant to the scene and three alibi witnesses would have said he wasn't at the scene. *Bigelow*, 576 F.3d at 291.

16

have changed this outcome. So his testimony was "not so significant" that "it was necessarily unreasonable for the [TCCA] to conclude that [Moody] had failed to show a 'substantial' likelihood of a different sentence." *Cullen*, 563 U.S. at 202.

**B.**

Finally, we consider Moody's actual innocence claim. Moody wants to bring a number of claims that he concedes are procedurally defaulted. Generally, a habeas petitioner who fails to raise a claim in state post-convictions proceedings can't raise them in the federal counterpart. *See Irick v. Bell*, 565 F.3d 315, 323–24 (6th Cir. 2009). But the Supreme Court has recognized an exception for petitioners who are "actually innocent." *See Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). To show actual innocence, Moody must establish, by "new" and "reliable" evidence, that it is more likely than not that "no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 324, 327 (1995). When weighing the evidence, our task is to make "a probabilistic determination about what reasonable, properly instructed jurors would do" with it. *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 329).

Moody argues that he falls into the actual-innocence exception because Thomas's testimony showed he didn't take part in the shooting. In so asserting, he faces an uphill climb. Successful actual innocence claims are reserved only for "extraordinary case[s]." *Schlup*, 513 U.S. at 321. It is not enough for Moody to challenge the "mere legal insufficiency" of the evidence; he must show "factual innocence." *Bell v. Howes*, 703 F.3d 848, 854 (6th Cir. 2012) (internal quotations omitted). That is, Moody must provide evidence that shows he did not "actually commit[] the underlying conduct." *McKay v. United States*, 657 F.3d 1190, 1199 (11th Cir. 2011) (collecting cases).

17

Moody failed to meet this standard. Moody contends that Thomas's testimony shows that he was not driving the car, did not have a gun, and directed no one to shoot. As Moody sees it, no reasonable juror who heard this testimony would find him guilty of the underlying crime. This argument fails for two reasons.

First, Thomas's testimony is neither "new" nor "reliable." *Schlup*, 513 U.S. at 324. As explained above, Thomas's testimony is cumulative and doesn't add anything to what the jury heard. So even if the jury had heard it, there is no indication that no reasonable juror would have found him not guilty. And Thomas is not a credible witness. Not only did he lie to the police by saying he wasn't involved in the shooting, but he is also Moody's half-brother. And as the district court explained, he has already pleaded guilty to second-degree murder and so has nothing to lose in testifying for his brother now. *Moody*, 2020 WL 1061950, at *18.

And we aren't alone in thinking that Thomas isn't credible. After hearing Thomas's testimony at Moody's post-conviction hearing, the state trial court noted the "many inconsistencies" in his testimony and characterized it as "fodder for impeachment." *See Moody*, 2017 WL 829820, at *9–10. And at Matthews's post-conviction hearing, a different trial court found Thomas's testimony not credible. *Matthews v. State*, No. M2014-01663-CCA-R3-ECN, 2015 WL 3814164, at *7 (Tenn. Crim. App. Jun. 19, 2015). Because Thomas's testimony is easily impeachable and unreliable, reasonable jurors could discredit it.

Second, even if Thomas's testimony were reliable, it would still fail to show Moody's actual innocence. That's because, by itself, the testimony does little to establish that no reasonable juror would have found Moody guilty after hearing it. *Schlup*, 513 U.S. at 327. His testimony did not challenge the circumstantial evidence in the case that could have swayed the jury. The car used in the shooting belonged to Moody's mother, there were guns in the car, Moody knew about

the guns, and he gave up his driver's seat to another individual. Further, Caldwell's testimony directly implicated Thomas in the shooting, and there is no reason to think that a jury would discredit Caldwell and at the same time credit Thomas. Thus, even with Thomas's testimony, Moody hasn't shown that "no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Id.* And so we refuse to excuse his procedural defaults.

## IV.

Moody has failed to show that the TCCA unreasonably applied federal law or that he is actually innocent. For these reasons, we **AFFIRM**.

COLE, Circuit Judge, concurring. Under § 2254(d) of AEDPA, we may only grant habeas if the TCCA unreasonably applied the principles outlined in *Strickland* to the facts of this case *or* made unreasonable factual determinations in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 413 (2000). If "fairminded jurists could disagree on the correctness of the state court's decision," then the ruling was reasonable, and the panel should not disrupt the TCCA's conclusion. *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations omitted) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Because I agree that the TCCA did not unreasonably apply *Strickland* to the facts of this case, I concur with the majority.

This is a tragic case from every perspective, including Moody's. Moody was just 14 years old at the time of the shooting, no gun was ever recovered from or associated with Moody, and—-unlike the other boys convicted in this case—the prosecution could not identify Moody's motive for the crime. The only eyewitness who testified against Moody changed his version of the story several times before implicating Moody as a shooter. That witness has since recanted his trial testimony, explaining that he was coerced by police to lie and place blame on Moody. And, at the close of trial, the jury found Moody not guilty of firearm possession but convicted him of murder. Considering Moody's young age at the time of the shooting, the scant evidence against him, and the jury's determination that he was not one of the shooters, I believe that Moody is an excellent candidate for clemency.